## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | | **Criminal No. 23-cr-454 (JEB)** |
| **v.** | : | |
| | | **The Honorable James E. Boasberg** |
| **DONALD PEARSTON** | : | |
| | | **Sentencing: April 25, 2024** |
| **Defendant.** | : | |

### DEFENDANT'S POSITION ON SENTENCING

COMES NOW Donald Pearston, by counsel, and respectfully submits this memorandum on Defendant's Position on Sentencing in this matter. Mr. Pearston quickly accepted full responsibility for his actions. He makes no excuses and is deeply remorseful for his conduct and for the irreparable harm it has caused. He is committed to redeeming himself in the eyes of his family, this Court and the community at large and avoiding all criminal conduct in the future. Defendant prays this Honorable Court consider Defendant's age, health and lack of any prior criminal history and consider a non-custodial sentence. In support thereof, Defendant states as follows:

Donald Pearston was arrested on September 20, 2023 for his involvement in the Capitol insurrection on January 6, 2021. Specifically, Mr. Pearston was charged with four misdemeanors:

(1) 18 U.S.C. § 1752(a)(1) (entering and remaining in a restricted building or grounds);
(2) 18 U.S.C. §1752(1)(2) (disorderly and disruptive conduct in a restricted building or grounds);
(3) 40 U.S.C. §5104(e)(2)(D) (disorderly conduct in a capitol building); &
(4) 40 U.S.C. §5104(e)(2)(G) (parading, demonstrating or picketing in a capitol building).

Mr. Pearston was subsequently released pursuant to pre-trial supervision and has been

compliant with this supervision throughout the pendency of this matter.  On January 11, 2024 Mr. Pearson plead guilty to Counts 3 and 4 pursuant to an agreement with the United States, both Class B misdemeanors punishable by up to six (6) months imprisonment and/or a fine of not more than $5,000.  Pursuant to an agreement with the government, upon sentencing the government shall dismiss Counts 1 and 2.  There is no agreement as to sentencing other than that Defendant agrees to pay restitution in the amount of $500 to the Architects of the Capitol.

Mr. Pearston's incursion into the U.S. Capitol on January 6th was a product of significant and serious misjudgment and Mr. Pearston has regretted this decision ever since. *Letter of Donald Pearston, provided as Exhibit 1*.  Mr. Pearston traveled to D.C. alone to attend then-President Trump's "Stop the Steal Rally" as did thousands of supporters of the former President. Although he had no prior intention to do so, Mr. Pearston ultimately ventured to the U.S. Capitol as part of the crowd on a whim and without any planning or coordination beforehand.  He has no association to any militia or right-wing militant groups and had no violent intent upon entering the Capitol.

Mr. Pearston walked past opened barricades and found himself amongst a large group on the outside of the West side of the Capitol building.  A line of D.C. Metropolitan Police Officers began a concerted effort to clear that area using batons and riot shields.  As agreed upon in the statement of facts which form the basis for Mr. Pearston's plea of guilt, Mr. Pearston did not immediately exit the area but instead faced the officers until they physically engaged with others nearby and Mr. Pearston was knocked to the ground and later exited the area.  This forms the basis for Mr. Pearston's plea of guilt to 'disorderly conduct' and he takes full responsibility for his actions in failing to clear from the area prior to being forcibly removed.

At approximately 3:06pm Mr. Pearston subsequently followed a group of others through

2

an open door on the West side of the building.  Mr. Pearston is not familiar with the Capitol and

wandered around aimlessly for a few minutes (approximately 6 minutes according to the

government's sentencing memorandum).  Images from surveillance within the building show

Mr. Pearston walking through various rooms unaccompanied.  At approximately 3:12pm law

enforcement deployed pepper spray in a large room which accumulated above and wafted

through the crowd.  Mr. Pearston, already in poor health and wearing a surgical mask, exited on

his own volition at 3:12pm.

Mr. Pearston remained outside the Capitol building for about 10 minutes during which

time he began searching for a public restroom.  Having not found one, he re-entered the Capitol

at about 3:21pm through an open door into a crowded service area in search of a bathroom.

While in that service area, law enforcement told everyone to exit at which point Mr. Pearston

again exited the Capitol building at approximately 3:30pm.  He did not return.

Mr. Pearston never engaged in any assaultive or destructive behavior nor did he

encourage others to engage in any such behavior.  Since that day he has never bragged or taken

pride in his role in this tragic event and has never posted any such comments to any social media.

He is a 59-year old retired teacher and self-employed landlord, a husband and a father of two.

Mr. Pearston has no prior criminal convictions and is a decorated veteran of the United States

Marine Corps.  Sadly (and likely as a result of his service and stay at Camp Lejeune), Mr.

Pearston suffers from Addison's disease and Hashimoto's disease, as well as diabetes, psoriasis

and hearing loss. He does not smoke nor does he drink alcohol.  Mr. Pearston considers his

actions on January 6th as a black stain on his reputation and character.

Mr. Pearston has been forthright with U.S. probation and agrees with the pre-sentence

investigation report.  Because Mr. Pearston has plead guilty to Class B misdemeanors, the U.S.

3

Sentencing Guidelines do not apply.

**Section 3553(a) Factors**

The factors for the district court to consider include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the kinds of sentences available, (3) the Guidelines range, (4) the need to avoid unwarranted sentencing disparities, (5) the need for restitution, and (6) the need for the sentence to reflect: the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to the defendant and others, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. § 3553(a). The Court must weigh each of these factors when determining the appropriate sentence. *Id.*

Taking all these factors into account, it is respectfully suggested that a non-custodial sentence is appropriate in this case.

> **a.  Nature and Characteristics of the Offense and Characteristics of the Defendant – 18 U.S.C. §3553(a)(1)**
>
> i.  <u>Mr. Pearston's Involvement in the Offense Conduct</u>

The details of Mr. Pearston's offense conduct is significantly discussed in the PSR and not fully recounted here.  Mr. Pearston had no intention of storming the U.S. Capitol when he traveled to the Donald Trump rally on January 6th, 2021.  However, he does not dispute in the slightest that he unlawfully entered the Capitol and does not diminish the damage done that day, not only to property but to every life affected as a result directly and indirectly.  Undersigned counsel has reviewed numerous sentencing memoranda filed by the government in these cases and both counsel and Mr. Pearston agree that "there were no tourists" inside the Capitol on that

4

day.  Mr. Pearston has never diminished the enormity of the January 6th riots nor his participation.  He simply wishes to take responsibility for his actions and move forward with his life.

Mr. Pearston entered the U.S. Capitol along with a large crowd through an open door.  He did not break any windows or doors upon entry to the Capitol.  Once inside the Capitol, Mr. Pearston is unsure of exactly where he went but exited minutes later.  He only re-entered later in the hopes of finding a restroom and again promptly exited.  He never posted anything to social media relating to his actions that day nor does he associate with any extremist or militant groups. Special Agents Sellers and Martin interviewed Mr. Pearston in Eagle, Nebraska on December 14, 2021. *See Interview Summary of FBI Special Agents Sellers and Martin, provided as Exhibit 2*. Mr. Pearston was compliant and forthright in his interview, providing a detailed description of his actions and those of others he observed that day. *Id*. He provided FBI agents with his cell phone and social media accounts and gave them permission to search for evidence. *Id*. He was then shown screenshots from surveillance footage and positively identified himself. *Id*.

Mr. Pearston was ultimately arrested and charged almost two years later, on September 20, 2023.  He has been fully compliant with pre-trial supervision since that time.

ii. <u>Characteristics of Defendant – Donald Pearston</u>



*Donald with his 'best friend,' Skip.*[1]

Donald Pearston was born April 21, 1965 in San Diego, California.  Although his parents separated when Donald was approximately 7 years old, he would describe his upbringing as happy.  Following the divorce, Donald's father had primary custody of him and subsequently moved to Weatherford, Texas where he served as a career police officer.  Following the divorce, Donald did not see his mother regularly although he would describe their relationship as 'good.'  Donald graduated from high school and enlisted in the United States Marine Corps.  During his active service, Mr. Pearston was stationed at Camp Lejeune, North Carolina, Japan, the Philippines and Korea.  He was honorably discharged in 1987 with decorations for overseas deployment and good conduct.

---

[1] At the request of Mr. Pearston, identifying information and photographs of family members (other than Skip) have been omitted from this filing out of respect for their privacy.

Following his service in the Marine Corps, Donald resumed his education and attended Point Loma Nazarene College where he obtained a bachelor's degree in business administration. He went on to obtain a master's degree from California State University in Teaching English to Speakers of Other Languages.  Donald then spent some time teaching English abroad including in the Czech Republic, South Korea and Dubai.

Donald ultimately moved back to the United States where he invested in residential property in and around Lincoln, Nebraska and continued to teach at the University of Nebraska at Lincoln and Southeast Community College (also in Lincoln).  Donald retired from his teaching positions in 2016 to focus on managing his residential properties.

Donald has been married twice.  He married his first wife in in 1997 in California.  They were married for 16 years and have one adult son who resides in Lincoln, NE.  Donald maintains almost daily contact with his son.  He married his current wife in 2016 and the two reside together in Eagle, Nebraska.  Donald also has a 30-year-old daughter in Prague from a relationship he had while teaching English in the Czech Republic.  Donald's relationship with his daughter is good and he maintains weekly contact with her.

Donald has no prior criminal convictions and no connections to any far-right groups, activists or militias.  In late December, Donald learned of the planned rally by then-president Donald Trump on January 6th.  To show his support, Donald decided to attempt to attend.

Without restating the facts surrounding the offense, Donald traveled to Washington, D.C. with no intention of visiting, let alone invading, the U.S. Capitol or in any way impeding the work of Congress in certifying the election, other than to show his support for then-president Trump.

  **b.**  **18 U.S.C. §3553(a)(2)(A) - The Need for the Sentence Imposed:**

(A)to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)to afford adequate deterrence to criminal conduct;

(C)to protect the public from further crimes of the defendant; and

(D)to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

Donald has no prior record of criminal convictions.  He is a 59-year old retired teacher who manages residential properties in and around Lincoln, NE.  He does not associate with any extremist or militant groups and he does not drink alcohol.  Donald has fully accepted responsibility for his actions and never attempted to minimize his involvement or his actions on January 6th.  Beginning as early as December 2021 Donald has been fully compliant and cooperative with authorities, offering his cell phone for inspection and providing his social media account information to federal law enforcement.

Donald has also been compliant with pre-trial supervision since the day of his arrest in September 2023.  He travels to the Bahamas frequently to utilize his boat which is docked at Marsh Harbour.  In order to do so, Donald has requested and received permission of the Court and has abided by all terms and conditions of pre-trial.

Additionally, since approximately fall 2021, Donald has been subjected to secondary screening for every flight, both domestic and international.  Donald attributes this heightened scrutiny to his involvement on January 6th and has been fully compliant with authorities despite any embarrassment and/or inconvenience.[2]

Considering his acceptance of responsibility, remorse, and pre-trial release compliance, it

---

[2] For instance, Donald was detained during his trip to the Bahamas in December 2023 (authorized by order of this Court) in Miami for approximately 6 hours.

is clear that Donald presents no risk of recidivism.

      **c.**      **18 U.S.C. §3553(a)(3) The Kinds of Sentences Available**

Violations of 40 U.S.C. § 5104(e)(2)(D) and 5104(e)(2)(G) are Class B misdemeanors, punishable by up to 6 months of incarceration and/or a fine of not more than $5,000.  As a federal criminal misdemeanor, a suspended sentence conditioned on probation is available. There are no sentencing guidelines for Class B misdemeanors, the statutory sentence range equivalent to the lowest sentencing range available within the guidelines.

This Court may exercise its discretion in sentencing Mr. Pearston, after consideration of all of the other statutory considerations outlined in 18 U.S.C. §3553(a), and sentence Mr. Pearston to a term of incarceration entirely suspended contingent on his successful completion of a term of probation.  It should be noted that Mr. Pearston has agreed to pay restitution in the amount of $500 at the request of the U.S. government.

      **d.**      **18 U.S.C. §3553(a)(4) & (5)**

Defendant submits that these subsections are not applicable to the instant charge as there are no federal sentencing guidelines for a Class B misdemeanor (§3553(a)(4)) and there has been no pertinent policy statement with regard to the sentencing of this offense (§3553(a)(5)).

      **e.**      **18 U.S.C. §3553(a)(6) The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records who Have Been Found Guilty of Similar Conduct**

Defendant Mr. Pearston is charged and has pleaded guilty to two counts of Class B misdemeanors related to his trespass in a federal building and disorderly conduct on Capitol grounds.  Standing alone and given his age and lack of any criminal convictions, such convictions would usually result in a sentence not involving active incarceration.

However, Defendant agrees and submits that the events on January 6th are of a different

nature than an ordinary trespass to federal property.  Hundreds of individuals, if not more, trespassed on Capitol grounds, generally in support of an attempt to protest and potentially prevent Congress from certifying the election results of the 2020 presidential election.  Many engaged in violent conduct; others did not.  Some entered the Capitol building itself; others did not.  Some violated the Senate floor, the House floor and/or offices of lawmakers; others did not.  Some encouraged others and bragged on social media; others did not.  The actions of the whole are to be condemned in the strongest terms.  However, the repercussions for individual defendants should reflect their particular participation, their individual backgrounds including criminal history, their intent at the time of the offense and their actions following the offense (i.e., acceptance of responsibility or braggadocio).

To his credit, Donald Pearston timely agreed to plead guilty following negotiations with the government.

As the government points out in their sentencing memorandum, hundreds of others involved in the January 6th offense have been sentenced.  For purposes of brevity and relevance, Defendant will focus only on those who have been found guilty of a misdemeanor within the Capitol (others have been found guilty of felony conduct and/or misdemeanor conduct outside of the Capitol).

On June 23rd, 2021 this Court sentenced Anna Morgan-Lloyd, 49, to three years of probation at the recommendation of both the defendant and U.S. Attorney's Office.  (See U.S. Attorney's Office Memorandum in Aid of Sentencing, provided).  Supporting their recommendation for a non-jail sentence, the U.S. Attorney's Office focused on Morgan-Lloyd's lack of pre-planning or coordination in entering the Capitol, the lack of evidence that she incited others to commit acts of violence or committed acts of violence against law enforcement herself,

10

the lack of evidence that she destroyed or stole property from the Capitol and the fact that she

remained in a limited part of the building for a limited period of time.  The government also

focused on her expressions of remorse in her actions during the pendency of her criminal

prosecution.  The Court sentenced Morgan-Lloyd to three years of probation, 120 hours of

community service and restitution in the amount of $500.  The government did note, however,

that Morgan-Lloyd initially bragged of her participation in the January 6th event on social media:

> While inside the Capitol building, the Defendant was photographed with Bissey
> and two other individuals, one of whom is holding a Trump campaign flag. Bissey
> later posted the photo on Facebook with the caption, "Inside the Capitol
> Building."
>
> On January 6, 2021, in response to a post by another rioter, the Defendant wrote,
> "*I'm here. Best day ever. We stormed the capital building me and Dona Bissey
> were in the first 50 people in.*"
>
> On January 7, 2021, Bissey posted a photo on Facebook, tagging the Defendant
> and another individual, and wrote, "*We are home. Thank You to ALL that
> messaged checking in and concerned. It was a day I'll remember forever. I'm
> proud that I was a part of it! No Shame. BTW turn off the #FakeNews.*" In a
> comment to this post, the Defendant wrote, "*That was the most exciting day of my
> life.*" The Defendant further commented, "*Dona Bissey I'm so glad we were there.
> For the experience and memory but most of all we can spread the truth about
> what happened and open the eyes of some of our friends.*"
>
> On January 8, 2021, Bissey posted two photos from the western front of the
> Capitol building. The photo included images of members of the mob climbing the
> scaffolding and another of a rioter holding a stolen and broken sign that read,
> "Speaker of the House." Bissey wrote on the post, "*This really happened! Anna
> Morgan-Lloyd took the photo.*"
>
> On January 11, 2021, Bissey posted a photo on Facebook which showed
> individuals walking down the steps of the Capitol building. Bissey wrote, "On our
> way down" and tagged the Defendant.

(emphasis added).

Defendant's case is distinguishable from that of Anna Morgan-Lloyd.  Like Morgan-

Lloyd, Defendant has taken responsibility and expressed remorse for his actions.  Unlike

Morgan-Lloyd, however, Defendant never bragged or posted statements or images to social media depicting his involvement in the events of January 6th.

Likewise, Valerie Elaine Ehrke was sentenced on September 17th, 2021 after having plead guilty to parading, picketing or demonstrating within the Capitol (the same charge as Defendant). In that case, again the U.S. Attorney's Office recommended a non-jail sentence of probation and 40 hours of community service. In so arguing, the U.S. Attorney's Office cited Ehrke's limited time within the building (approximately 1 minute), lack of destruction of property and limited social media activity following the offense. However, in their memorandum in aid of sentencing, the government noted that Ehrke, after attending the Trump rally and returning to her hotel room, chose to go back out to the U.S. Capitol after watching on television that the crowd was surrounding the building. She then traveled back to the national mall and to the U.S. Capitol, filming and uploading video to Facebook including the caption "on the way to the breached capitol building [sic]." She films herself entering the U.S. Capitol through the North entrance. Once inside, Ehrke finds herself at the back of a large crowd as a high-pitched alarm sounds within the building. Police in front of the crowd begin forcing the crowd back outside. As part of the crowd, Ehrke is forcibly pushed back out of the building. She is only in the building for about one minute. The government's memorandum follows:

> When she posted the above-referenced video that she took of her and others in the hallway, she added this caption: "*We made it inside, right before they shoved us all out. I took off when I felt pepper spray in my throat! Lol.*" A screenshot of that post is reproduced below. The government would note that the defendant's Facebook profile picture in the screenshot below is a flaming "Q," which is commonly associated with Q-Anon, a far-right conspiracy group.

(emphasis added).

The government also highlights that Ehrke was amongst the first in her defendant group

to plead guilty (on June 30th, 2021).  Additionally, Ehrke is noted to have at least one criminal

conviction, for distribution of marijuana.

Again, Defendant Mr. Pearston is in ways similarly situated to Ms. Ehrke, and in ways

dissimilar.  Like Ehrke, Mr. Pearston was only in the Capitol for a brief period of time.  Like

Ehrke, Mr. Pearston's presence in the Capitol was cut short by police intervention.  Like Ehrke,

Mr. Pearston agreed to timely plead guilty.  Unlike Ehrke, Mr. Pearston never posted images or

videos to social media.  Unlike Ehrke, Mr. Pearston has no criminal convictions. Unlike Ehrke,

Mr. Pearston is not associated with any conspiracist groups such as Q-Anon.

Others sentenced include Andrew Ryan Bennett,[3] Danielle Doyle,[4] Jessica and Joshua

Bustle,[5] Derek Jancart and Erik Rau[6].  It should be noted in the cases of Derek Jancart and Erik

Rau that there were significant aggravating factors.[7]

The case of Danielle Doyle is interesting because it is alleged that Doyle entered the

Capitol through a broken window (confirmed with video evidence), participated in a

confrontation with Capitol police within the Capitol (yelling at them from within the crowd),

---

[3] Sentenced on 10/1/21 to a term of 24 months of probation including three months home confinement.
[4] Sentenced on 10/1/21 to a term of 2 months of probation.
[5] Sentenced on 8/30/21 to a term of 24 months of probation including 60 days of home confinement (Jessica); sentenced on 8/30/21 to a term of 24 months of probation including 30 days of home confinement (Joshua).
[6] Sentenced on 9/29/21 to a term of 45 days of active incarceration (Jancart); sentenced on 9/29/21 to a term of 45 days of active incarceration (Rau).
[7] ". . . (1) the defendant prepared for violence by bringing a gas mask and two-way radios to Washington, D.C.; (2) he was aware of the potential for violence because he responded to the Capitol only after hearing it had been "breached"; (3) he laughed and cheered while the forward line of the rioters broke through the police line and posted a video to Facebook of Rau screaming "we have you surrounded" at the police officers attempting to hold the line around the Capitol; (4) he penetrated the U.S. Capitol all the way to the Speaker's conference room; (5) his statements on Facebook after January 6 reveal a total lack of remorse; (6) he actively spread propaganda on social media by falsely downplaying the violence on January 6; (7) he likely destroyed evidence by deleting videos and message threads from his phone; and (8) his social media statements reveal he believes a revolution is coming and suggest the possibility of future violence by this defendant." *Sentencing Memorandum filed by the U.S. Attorney's Office on 9/24/21.*

remained in the Capitol for approximately 24 minutes and posted images and messages on social media relating to her incursion.  As the government states in their sentencing memorandum, "Ultimately, Doyle walked through three levels of the U.S. Capitol building."  In the days after the riot, Doyle texted another person "*I literally can't do anymore Q shit. Brandon Stracka was arrested today. He didn't even go in the capitol. This is fucking insane,*" referencing her participation in the Q-Anon conspiracy movement.  Additionally, the government expressed some skepticism of Doyle's subsequent remorse based on previous representations made to FBI and other law enforcement agents:

> While the government wants to credit the defendant's remorse in her allocution statement, we also recognize that Doyle has not been fully transparent with law enforcement and that we have no support for Doyle's remorse, other than her representations in her allocution statement.

The government requested a period of home confinement for two months, probation for two years and the completion of 60 hours of community service.  Doyle was sentenced by this Court on October 1st, 2021 to two months of probation, a fine of $3,000 and restitution in the amount of $500.  While Defendant Mr. Pearston also entered the Capitol, he did not travel as extensively throughout the building as Doyle, never yelled at law enforcement or encouraged others to confront law enforcement, never posted images or comments regarding the riot or his participation to social media and has no connection to Q-Anon or any other conspiracist groups.

Judges in this district have imposed sentences of probation for violations of 40 U.S.C. § 5104(e)(2)(G) and §5104(e)(2)(D) on more egregious facts than those here. A non-exhaustive list of such defendants includes:

- In *United States v. Bennett*, 1:21-cr-227 (JEB), the defendant was present when rioters tried to breach doors near the Speaker's Lobby and was close enough to hear the gunshot that fatally wounded another rioter; was an apparent admirer of the Proud Boys; posted a boastful message on social media regarding his unlawful entry into the Capitol; and had five prior convictions for property and drug-possession crimes. *See* United States' Sent. Memo, ECF No. 24 at 2, 5 & 9. The Court imposed a sentence of 24 months of probation. *See* Judgment as to Andrew Bennett, ECF No. 29.

- In *United States v. Gallagher*, 6:21-cr-41 (CJN), the defendant followed police officers down the stairs to the Capitol Visitor Center seconds after the officers were forced to retreat due to rioters pelting them with chairs and unknown liquids. *See* United States' Sent. Memo, ECF No. 98 at 2-3. The Court imposed a sentence of two years of supervised probation. *See* Judgment as to Thomas Gallagher, ECF No. 123.

- In *United States v. Edwards*, 1:21-cr-366 (JEB), the defendant entered the Capitol and went as far as breaching the office of Senator Jeff Merkley, which was later discovered ransacked. Additionally, although the defendant did not post to social media, his wife posted reports from her husband which included "[t]hey broke some furniture [and] proceeded to storm the floors." *See* United States' Sent. Memo, ECF No. 27 at 1-2.  The Court imposed as sentence of one year of supervised probation. *See* Judgment as to Gary Edwards, ECF No. 29.

- In *United States v. Sean Cordon*, 21-cr-269 (TNM), the defendant wore body armor and carried a gas mask and bear spray into the Capitol. *See* United States' Sent. Memo, ECF No 31 at 2. He told law enforcement he saw a rioter push a police officer on Capitol grounds. *Id*. at 3. He entered the building by climbing through the broken windows next to the Senate Wing Door 12 minutes after rioters initially breached that entry point. *Id*. at 5. The Court imposed a sentence of two months of probation and a $4,000 fine. *See* Judgment as to Sean Cordon, ECF No. 37.

- In *United States v. Doyle*, 1:21-cr-324 (TNM), the defendant entered the Capitol through a broken window 10 minutes after the initial breach and yelled at a police officer. *See* United

States' Sent. Memo, ECF No. 27 at 3. The Court imposed a sentence of two months of probation and a $3,000 fine. *See* Judgment as to Danielle Doyle, ECF No. 34.

- In *United States v. Ehrke*, 1:21-cr-97 (PLF), while the events of January 6 were unfolding, the defendant boasted on Facebook that she was "on the way to the breached capitol building [sic]." *See* United States' Sent. Memo, ECF No. 20 at 2. The Court sentenced her to three years of probation. *See* Judgment as to Valerie Ehrke, ECF No. 26.

- In *United States v. Rosa*, No. 1:21-cr-68 (TNM), the defendant posted a photo on social media as he walked to the rally on the Mall with the caption "And we fight!!!" and acknowledged he heard bangs and smelled pepper spray prior to entering the Capitol. *See* United States' Sent. Memo, ECF No. 66. at 4-5. The Court imposed a term of 12 months of probation. *See* Judgment as to Eliel Rosa, ECF No. 79.

In some of the cases in which in which the defendant pleaded guilty to 40 U.S.C. §5104(e)(2)(G) and was sentenced either to jail or home confinement, the conduct alleged was significantly more aggravating than that of Mr. Pearston:

- In *United States v. Bauer*, No. 21-cr-49 (TSC), the defendant took triumphant selfies from the Capitol Crypt and while standing on the hood of a government vehicle with a middle finger raised; deleted Facebook posts in an attempt to destroy evidence; told the FBI, "I don't feel like I done nothing terribly wrong"; and had an extensive criminal record that resulted in a previous prison sentence. *See* United States' Sent. Memo, ECF No. 33 at 4-6, 11-12. The Court imposed 45 days of incarceration and required the defendant to complete 60 hours of community service. *See* Judgment as to Robert Bauer, ECF No. 44.

- In *United States v. Hemenway*, 21-cr-49 (TSC), the defendant, who acted in concert with Mr. Bauer, entered the Senate Wing Door at 2:19 p.m. *See* United States' Sent. Memo, ECF No. 32 at 3. (Mr. Edwards entered the same door at 3:01.) Like Mr. Bauer, this defendant took celebratory selfies both inside the Capitol and while standing on the

16

hood of a government vehicle. *Id*. at 4-5. Like Mr. Bauer, this defendant previously served a prison sentence. In Mr. Hemenway's case it was for Sexual Battery and Criminal Confinement. *Id*. at 11. The Court imposed 45 days of incarceration and required the defendant to complete 60 hours of community service. *See* Judgment as to Edward Hemenway, ECF No. 46.

- In *United States v. Bissey*, 1:21-cr-165 (TSC), the defendant was inside the Capitol for about 10 minutes, but celebrated on Twitter, "This is the First time the U.S. Capitol had been breached since it was attacked by the British in 1814," and, regarding January 6, "It was a day I'll remember forever. I'm proud that I was part of it! No Shame." *See* United States' Sent. Memo, ECF No. 26 at 3. The Court imposed 14 days of incarceration and 60 hours of community service. *See* Judgment as to Dona Bissey, ECF No. 32.

- In *United States v. Pham*, 1:21-cr-109 (TJK), the defendant, a senior Houston police officer, faced off with officers in riot gear across a makeshift barrier; shouted "We're taking the House back!"; entered the office suite of House Leader Kevin McCarthy; and denied to FBI agents that he had entered the Capitol Building. *See* United States' Sent. Memo, ECF No. 36 at 1, 5-6, 9, & 11. The Court imposed 45 days of incarceration and a $1,000 fine. *See* Minute Entry of 12/10/2021.

- In *United States v. Jessica Bustle*, 1:21-cr-238 (TFH), the defendant remained inside the Capitol for about 20 minutes and engaged in no violence. *See* United States' Sent. Memo, ECF No. 39 at 2. However, on Facebook before the riot, she posted "[w]e don't win this thing sitting on the sidelines. Excited to stand for truth with my fellow patriots and freedom fighters in DC today." *Id*. Afterwards, also on Facebook, she called Vice President Pence a "traitor," bragged that she "stormed the Capitol," called for a revolution, and wrote, "I'm proud of [those who entered the Capitol] from [sic] standing up!" *Id*. at 3. The Court imposed 60 days of home confinement and 24 months

17

of probation.[8] *See* Judgment as Jessica Bustle, ECF No. 42.

- In *United States v. Mazzocco*, 1:21-cr-54 (TSC), the defendant penetrated the Capitol as far as the Spouse's Lounge and the Capitol Crypt, where he took smiling selfies. *See* United States' Sent. Memo, ECF No. 28 at 4-7. During the events of January 6, he posted a photo on Facebook captioned, "The capital is ours!" He also likely destroyed evidence since he was seen on surveillance video wearing a digital camera, yet when he was arrested 11 days later he claimed not to know where the camera was. *Id*. at 8. The defendant also sent a text message to a friend, "The more they discover it was antifa the more they're backin up." *Id*. at 10. The Court imposed a sentence of 45 days of jail time without probation. *See* Judgment as to Matthew Mazzocco, ECF No. 34.

- In *United States v. Fitchett*, 1:21-cr-41 (CJN), the defendant recorded a video before she entered the Capitol in which she exclaimed, "We are storming the Capitol. We have broken in. Patriots arise. Woo!" *See* United States' Sent. Memo, ECF No. 114 at 2. The defendant pursued officers down the steps to the Capitol Visitor Center where the officers ordered the crowd to leave. The defendant did not leave and was arrested in the Visitor Center. *Id*. at 4-6. The Court imposed a sentence of 36 months including one month of home confinement.[9] *See* Judgment as to Cindy Fitchett, ECF No. 145.

- In *United States v. Reeder*, 21-cr-166 (TFH), the defendant was present for and

---

[8] Joshua Bustle, Jessica Bustle's co-defendant and husband, also pleaded guilty to 40 U.S.C. § 5104(e)(2)(G). He accompanied his wife into the Capitol but did not post inflammatory social media messages. The Court imposed 30 days of home confinement and 24 months of probation. *See* Judgment as to Joshua Bustle, ECF No. 45 in *United States v. Bustle*, 1:21-cr-238 (TFH).

[9] Douglas Sweet, who was alongside Ms. Fitchett throughout her foray into the Capitol, told a local news station on January 7 that he went to D.C. to "talk to the Senate and the House and actually speak," and realized he might have to "pretty much force [his] way in." *See* United States' Sent. Memo, ECF No. 115 in *United States v. Fitchett*, 1:21-cr-41 (CJN), at 8. He also has a prior conviction for Contributing to the Delinquency of Minor, *id*. at 13. The Court sentenced him to 36 months of probation with one month of home detention. *See* Judgment as to Douglas Sweet, ECF No. 142 in *United States v. Fitchett*, 1:21-cr-41 (CJN).

recorded an assault on two Capitol Police officers in the Capitol rotunda. He did not intercede to stop the assaults. *See* United States' Sent. Memo, ECF No. 26 at 4. He posted a video in which he said, "We had to do.. ah.. battle with the police inside." *Id*. The Court imposed a sentence of three months without probation. *See* Judgment as to Robert Reeder, ECF No. 41.

- In *United States v. Ericson*, 21-cr-506 (TNM), the defendant reached the United States House of Representatives Speaker's Conference Room where he posed for a picture with his feet on the Speaker's desk and helped himself to a beer from her refrigerator. He was also present when a crowd of rioters overran a position held by a group of police officers, and told the FBI that antifa was responsible for the violence and destruction that took place on January 6. *See* United States' Sent. Memo, ECF No. 37 at 3-4, 6-7. The 12/10/2021 Minute Entry indicates the Court imposed 24 months of probation. The United States in its Sentencing Memorandum in  the  instant case wrote that Ericson was sentenced to "20 days of weekend incarceration." *See* United States' Sent. Memo at 16.

In review of the above-referenced cases, it becomes clear that a wholly suspended period of incarceration conditioned upon Mr. Pearston's successful completion of a period of probation is appropriate in light of his actions on January 6th and his otherwise law-abiding and productive 59 years.

### f. 18 U.S.C. §3553(a)(7) The Need to Provide Restitution to Victims of the Offense

Defendant has agreed to pay restitution in the amount of $500 to the Architect of the Capitol as a condition of his plea and sentence in this case.

### Conclusion

Defendant Donald Pearston respectfully requests This Honorable Court impose a non-custodial sentence in this case and, if the Court is so inclined, a minimal period of supervised

probation.  Donald readily accepts responsibility for his actions and was quick to agree to plead and be found guilty of a federal criminal offense. He is a retiree, has no history of criminal convictions, is a decorated veteran of the United States Marine Corps, is not associated with any extremist or conspiracist groups, has never bragged or publicly displayed his involvement in the January 6th riot and has been fully cooperative with authorities from the moment of his arrest.

Donald has felt immense shame and anxiety as a result of his actions on January 6th.  He has no pride in his actions and rues the moments he made the fateful decisions to approach and enter the Capitol.  While his family remain loving and supportive, Donald can't help but feel that he let them down.  Donald accepts full responsibility for his actions and will accept whatever sentence this Court deems appropriate.

WHEREFORE Defendant Donald Pearston respectfully requests This Honorable Court sentence Defendant to restitution in the amount of $500 and a minimal amount of probation if the Court finds it reasonable and necessary.

Respectfully submitted,

DONALD PEARSTON

By counsel

_____*/s/ Sebastian M. Norton*_____
Sebastian M. Norton, DC Bar #1008961
King, Campbell, Poretz & Mitchell, PLLC
118 N. Alfred Street
Alexandria, VA 22314
(703) 683-7070 Telephone
(703) 652-6010 Facsimile
sebastian@kingcampbell.com
*Attorney for Defendant*

20

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of April, 2024, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will send a notification to counsel of record.

*/s/ Sebastian M. Norton*
Counsel for Defendant
